-182IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Shawn Genal, | ) | |
| | ) | C/A No. 6:11-182-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Prudential Insurance | ) | |
| Company of America, | ) | |
| | ) | |
| Defendant. | ) | |

_____

This matter is before the court for review of Defendant Prudential Insurance Company's ("Prudential's) decision to deny Plaintiff Shawn Genal's ("Plaintiff's") claim for accidental death benefits under an insurance policy which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. After a thorough review, the court reverses Prudential's denial of benefits.

**The A&D Life Insurance Policy**

The A&D policy provides the following:

This Coverage pays benefits for accidental Loss. Loss means the person's:

(1) loss of life; . . .

**A. BENEFITS.**

Benefits for accidental Loss are payable only if all of these conditions are met:

(1) The person sustains an accidental bodily Injury while a Covered Person.

(2) The Loss results directly from that Injury and from no other cause.

(3) The person suffers the Loss within . . .

   (b) 90 days after the accident if the person is a Covered Person age 70 or more . . .

**B. LOSSES NOT COVERED.**

A Loss is not covered if it results from any of these: . . .

   (3) Sickness whether the Loss results directly or indirectly from the Sickness.

(Admin. R. 13-14).

The policy also defines "injury" as an "[i]njury to the body of a Covered Person" and "sickness" as "[a]ny disorder of the body or mind of a Covered Person . . ., but not including an Injury." (Admin. R. 20). The policy, however, does not define "accident" or "accidental."

## Facts and Procedural Background

Plaintiff's 74-year-old father, Gregory Genal ("Decedent") died May 31, 2010. Decedent was insured under an accidental death and dismemberment ("AD&D") life insurance policy for $60,000 and Plaintiff was the named beneficiary. Decedent had suffered from multiple sclerosis ("MS") for approximately twenty-five (25) years and had been using a wheelchair. Shortly before his death, however, Decedent's wheelchair had broken down, and instead Decedent was using a motorized scooter. On May 31, 2010, Decedent was found unresponsive in his backyard. The scooter was found nearby in the grass near some flat stones beside a concrete patio and, according to the Police and Medical Examiner, it appeared that Decedent had fallen either while dismounting or pushing the scooter.

In his report, the medical examiner listed the cause of death as: "Environmental Heat Exposure Complicating Multiple Sclerosis." (Admin. R. 63). The medical examiner set forth the following diagnoses:

> I. Environmental Heat Exposure
>   A. Found outside in backyard of residence
>
> II. Multiple Sclerosis
>   A. Multiple plaques identified in cerebral white matter, paraventricular regions, pons, cerebellum, and brainstem
>
> III. Atherosclerotic cardiovascular disease
>
> IV. Gastric sclerosis
>
> V. Pulmonary edema (combined lung weight = 1384 gm)
>
> VI. Nephrosclerosis

(Admin. R. 64). The death certificate also states that the cause of death was "environmental heat exposure complicating multiple sclerosis" and listed the manner of death as "accident." (Admin. R. 141).

On June 15, 2010, Plaintiff filed for benefits under the AD&D life insurance policy. On October 8, 2010, Prudential denied Plaintiff's claim on the AD&D life insurance policy finding that Decedent's death was a result of his MS. (Admin. R. 75). Specifically, Prudential stated: "Since Mr. Genal's neurological deficits from his Multiple Sclerosis prevented him from removing himself from the Environmental Heat Exposure, his loss did result directly from sickness (Multiple Sclerosis)." (Admin. R. 76). Prudential relied upon the following opinion of Dr. Albert A. Kowalski, Vice President and Medical Director for Prudential, who is board certified in internal occupational medicine and a Certified Medical Review Officer:

> [I]n my opinion, there are actually two accidents that occurred on 05/29/2010. The first was when the insured fell dismounting the scooter or when he was trying to push the scooter. Since there was no evidence of trauma or injury, the records do not

support that the insured sustained a bodily injury. In addition, there is no indication that an injury/trauma from the fall prevented him from getting up and crawling into the house. In my opinion, based on the insured's history, the insured was not able to get up due to his difficulty walking (neurological deficit) from his Multiple Sclerosis.

The second injury was exposure to environmental heat. Since the insured was physically unable to get up, the heat exposure was unintentional & unforeseeable by the insured and resulted in the insured's death, in my opinion, this accident did result in an accidental bodily injury. Therefore, in my opinion and with reasonable degree of medical certainty, the insured did sustain an accidental bodily injury (Environmental Heat Exposure on 05/29/10.)

(Admin. R. 83). Dr. Kowalski then stated that Plaintiff's death resulted from environmental heat exposure. *Id*. Dr. Kowalski noted that Decedent had a history of MS, difficulty walking, and multiple falls requiring assistance after falling. *Id*. Dr. Kowalski stated that in his opinion, "the most likely reason the insured was not able to get up or crawl into the house after the fall was the result of neurological deficits due to his Multiple Sclerosis. Since the insured was not able to get up or crawl into the house due to his Multiple Sclerosis, the insured died of Environmental Heat Exposure . . . [I]f not for the insured's Multiple Sclerosis and his neurological deficits from his Multiple Sclerosis, the insured would have been able to get up or crawl into the house and not die from Environmental Heat Exposure." (Admin. R. 83-84). Dr. Kowalski concluded that the Decedent's loss resulted directly from his MS.

On October 22, 2010, Plaintiff appealed the denial of his claim. (Admin. R. 78-79). On November 29, 2010, Prudential denied Plaintiff's appeal stating that it was the Decedent's MS, "not an accidental bodily injury, that prevented him from getting up after he fell . . . and, as a result, he was exposed to the heat for approximately two days, which caused his death. Therefore, his death did result directly and/or indirectly from his multiple

sclerosis, as sickness." (Admin. R. 90). On December 23, 2010, Plaintiff appealed again, but then subsequently, on January 21, 2011, filed this action. (Admin. R. 92; 98). The parties agree that Plaintiff has exhausted all of his administrative remedies. (Joint Stip. ¶ 2).

## Standard of Review

In this case, the Parties agree that the standard of review is de novo. (Joint Stip. ¶ 3). The de novo standard of review allows the court to examine all of the evidence in the record and decide whether or not the plaintiff in a case is entitled to benefits without giving any deference to the plan administrator's decision to deny or terminate benefits. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir.1993). In conducting a de novo review, the court should look only at the evidence that was before the Plan administrator or trustee at the time of the determination. *Id*.

## Discussion

Pursuant to the A&D policy, benefits are payable only if the insured sustains an accidental bodily injury and a loss of life results directly from that injury and from no other cause. Further, a loss is excluded if it results directly or indirectly from sickness. As noted above, "accident" is not defined in the policy and the policy contains an exclusion when a loss results directly or indirectly from a sickness. The burden of proving that the Decedent's death was a result of an accident rests upon Plaintiff. *See Lincoln Nat. Life Ins. Co. v. Evans*, 943 F.Supp. 564, 567 (D.Md.1996) (*citing Motley v. Metropolitan Life Ins. Co.*, 834 F.Supp. 1272, 1276 (D.Kan.1993)). If Plaintiff meets this burden, then Prudential has the burden of proof to establish that the exclusion regarding sickness applies.

It is undisputed that Decedent had suffered from a pre-existing condition, MS, for

5

years prior to his death. Plaintiff contends that Decedent's death was an accident. Prudential argues that "but for" the MS and its resulting neurological deficiencies, Decedent would have been able to remove himself from the elements after he fell. (Def.'s Mem. at 9). Prudential points out that Decedent did not die from the fall and there was no evidence he suffered any injuries form the fall. *Id*. Prudential concludes Decedent's death was caused by his MS and not the direct result of an injury. *Id*. at 10. In its reply memorandum, Prudential states the differences between its argument and Plaintiff's is as follows:

> Plaintiff's Argument : Illness Triggered → Accident → Death (not excluded)

> Prudential's Argument : Accident → Illness Triggered → Death (excluded)

(Def.'s Reply Mem. at 2). The issue is wether the Decedent's MS substantially contributed to his death.

"The Fourth Circuit has held that when interpreting insurance policies under ERISA, courts are to be guided by federal common law rules." *Johnson v. Gen. Am. Life Ins. Co.*, 178 F.Supp.2d 644, 650 (W.D.Va. 2001) (internal citation omitted). In *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995), the court held that ERISA plans are to be interpreted "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." Similarly, "[a]lleged ambiguities should be reconciled, if possible, by giving language its ordinary meaning. . . ." *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir. 1992).[1]

---

[1]Plaintiff contends that this case is governed by the doctrine of contra proferentem, which requires a court to construe ambiguous contract language against the drafter. In 2009, the Fourth Circuit explicitly stated that the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105 (2008), foreclosed the application of contra proferentem where a plan gives an administrator discretion in interpreting an insurance plan. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009). While this rule "is inconsistent with a deferential review standard under which the plan

In *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir. 1993), the decedent suffered a toxic reaction to a drug administered for diagnostic purposes and died three days later.  The Fourth Circuit Court of Appeals held that when policy language limits coverage to losses caused by accidents "directly and independently of all other causes," the existence of a preexisting condition which contributes to the loss does not bar recovery under an ERISA policy unless the preexisting condition " substantially contributed to the disability or loss."  The Court adopted the two-part test set forth in *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir.1990), which provides that a court is to determine whether there is a pre-existing disease, pre-disposition, or susceptibility to injury and then whether it substantially contributed to the disability or loss.  *Quesinberry*, 987 F2d at 1028.  The policy language in *Quesinberry* and *Reliance Standard* required that the injury result "directly and independently of all other causes."  *Id*.

> Both the *Quesinberry* and *Reliance Standard* cases involved the interpretation of insurance policies providing coverage for death or total disability due to an accident. This test was derived to avoid the unique situation that arises with accident policies where, without the standard, coverage might only be available in extreme situations. *See Hall v. Metro. Life Ins. Co.*, 259 Fed. Appx. 589, 591 (4th Cir. 2007) (noting the *Reliance* test was derived to avoid coverage only being provided in facts equivalent to "a truck dropping from the skies, striking squarely and killing instantly a perfectly fit human specimen clutching a just-issued physician's clean bill of health.")

*Pegram v. Prudential Ins. Co.,* 2009 WL 1974942 (E.D.Va.  2009)   Plaintiff does not need to prove the existence of a sole cause of death.  Rather, Plaintiff needs only establish by a

---

administrator is given wide latitude to interpret plan language," it is appropriate in ERISA cases when using a de novo standard of review.  *Peach v. Ultramar Diamond Shamrock*, 229 F.Supp.2d 759, 766 (E.D.Mich.2002) (*citing Morton v. Smith*, 91 F.3d 867, 871 n. 1 (7th Cir.1996)).  In any event, the Fourth Circuit has limited "the application of the doctrine of contra proferentem in ERISA cases to the interpretation of complicated insurance contracts, particularly health insurance contracts."  *See, e. g., Vaughan v. Celanese Ams. Corp.*, 339 Fed. App'x 320, 328 (4th Cir. 2009)  (citations omitted).   Accordingly, the court declines to apply this principle in this case.

preponderance of the evidence that Decedent's MS did not "substantially contribute" to the Decedent's death.

The evidence indicates that the cause of the Decedent's death was initially triggered by the fall from the scooter and not his illness. While the fall by itself may not have caused Decedent's death, but for the fall, Decedent would not have died. Clearly, the fall substantially contributed to his death. Moreover, as Prudential's expert, Dr. Kowalski, stated, two accidents actually occurred - the fall and environmental heat exposure. (Admin. R. 83). He concluded that "the insured's loss did result directly from the injury (Environmental Heat Exposure on 05/29/10) and from no other cause." *Id*.[2] Therefore, but for the heat exposure, Decedent would also not have died. If he had fallen inside his house, while his MS still may have prevented him from getting up, he would not have been subjected to the environmental heat exposure. The court concludes that Decedent's MS did not substantially contribute to his death. As the Fourth Circuit has pointed out in *Quesinberry*, an overly strict interpretation of "directly and from no other causes" would provide coverage only where the insured was in perfect health at the time of an accident.

The holding in *Quesinberry*, however, did not address the second issue presented in this case regarding the exclusion and whether coverage was excluded because the loss was indirectly or directly the result of a sickness. As set forth above, the policy in this case provides an exclusion for a loss if it results from any "Sickness whether the Loss results directly or indirectly from the Sickness." (Admin. R. 13-14). Applying the same rational as set forth in *Quesinberry*, the court concludes that under the facts of this case, the

---

[2]Interestingly, Dr. Kowalski also opined that since the neurological deficits from Decedent's MS prevented him from removing himself from the heat,"the insured's loss did result directly from sickness (Mutiple Sclerosis)."

exclusion does not apply.

In *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818 (10th Cir. 2008), the Tenth Circuit Court of Appeals addressed a similar situation where an insured suffered a seizure which caused a car accident. The court found that the insured's death was caused by a skull fracture resulting from a car accident, not by the seizure that caused the car accident. *Id.* at 832. The Court stated, "[T]he Plan does not contain an exclusion for losses due to accidents that were caused by physical illness, but rather excludes only losses caused by physical illness." *Id.* The court concluded, "[T]he fact that the policy at issue here excludes losses that were caused or contributed to by physical illness does not change this analysis. A reasonable policyholder would understand this language to refer to causes contributing to the death, not to the accident." *Id.* "[C]ourts have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." *Id.* at 831. The court concluded that since the insured's death resulted from a skull fracture as a result of the car accident, and not the underlying sickness, the policy exclusion did not apply. *Id.*

Here, as Prudential's own expert, Dr. Kowalski, stated, two accidents actually occurred - the fall and environmental heat exposure. It is undisputed that Decedent did not die from the fall itself and Prudential states it is not arguing that Decedent's MS caused him to fall. Rather, Prudential argues that the Decedent's MS caused his death after he fell when Decedent was unable to remove himself from the elements. In addition to *Quesinberry*, Prudential relies upon *Hall v. Metropolitan Life Ins. Co,* 259 Fed. Appx. 589 (4th Cir. 2007), and *Danz v. Life Ins. Co. of N. Am.*, 215 F.Supp.2d 645, 651-52 (D.Md. 2002).

In *Hall*, the court held that a decedent's pre-existing bee-sting allergy was a pre-existing disease or predisposition to injury and that this allergy triggered an anaphylactic

9

reaction which substantially contributed to decedent's death. In *Danz*, the court held that Plaintiff had failed to establish by a preponderance of the evidence that the decedent's pre-existing cardiac condition did not substantially contribute to decedent's death when the evidence showed decedent had suffered a heart attack while driving and was involved in an automobile accident. However, here, there is no evidence that the fall triggered a flare-up in Decedent's MS or that his MS worsened in any way after the fall. Decedent's death was a direct result of the fall occurring *outside* and causing him to be exposed to the heat, not his MS. While Decedent's mobility had been compromised by his MS for some time prior to the fall and may have prevented him from removing himself from the elements, the fall and subsequent heat exposure were the direct causes of the Decedent's death. As the court held in *Graham v. Police & Firemen's Ins. Ass'n,* 116 P.2d 352, 355 (Wash. 1941), "'where disease merely contributes to the death or accident, after being precipitated by the accident, it (the disease) is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy.'" The pre-existing physical infirmity of the Decedent, specifically his lack of mobility, should not be found to be substantially contributing to his death. Accordingly, the court finds the exclusion does not apply and Prudential should not have denied Plaintiff's claim for accidental death benefits.

**Conclusion**

For the foregoing reasons, the denial of benefits is **REVERSED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
July 12, 2012